# IN RE APPLICATION FOR DISCIPLINE OF GORDON C. PETERSON.

110 N. W. (2d) 9.

June 23, 1961—No. 37,947.

*Glen P. Powrie,* for petitioner.
*Harry H. Peterson,* for respondent.

PER CURIAM.

Disciplinary proceedings upon the petition of the Practice of Law Committee of the Minnesota State Bar Association, referred to herein as petitioner, for the discipline of Gordon C. Peterson, referred to herein as respondent.

The matter was duly referred by an order of this court dated October 14, 1959, to the Honorable E. R. Selnes, one of the judges of the eighth judicial district, to act as referee with all the powers of a referee under Rule 53.03 of Rules of Civil Procedure and to take testimony

and report the same to this court together with his findings of fact. Thereafter, the referee caused the matter to come on for hearing at the courthouse in the city of Minneapolis on February 3 and 4, 1960.

Three charges of professional misconduct were made against the respondent, one of which was dismissed by the referee at the hearing. The other charges concern respondent's alleged professional relations with one Paul Hjelm and with one Martin P. Schmit. For convenience they will be referred to separately as the *Hjelm* charge and the *Schmit* charge.

The *Hjelm* charge stated in substance:

(1) That on or about January 19, 1958, respondent prepared a false and fictitious information against one Paul Hjelm, charging him with the crime of knowingly and willfully making and publishing a false statement for the purpose of obtaining a loan and advance of credit from the First National Bank of Minneapolis, with the intent that such loan and advance of credit be offered to and accepted by the Federal Housing Administration for insurance, and for the purpose of influencing the Federal Housing Administration to take action accepting such loan for insurance.

(2) That the respondent prepared said false information with the intention of obtaining certain sums of money from Paul Hjelm as a legal fee to represent said Paul Hjelm with regard to said charge.

(3) That in reliance upon said false representation and fictitious information, Paul Hjelm turned over to respondent the sum of $1,000 in payment for legal services to be rendered by respondent on behalf of Paul Hjelm in defense of the crime charged in said fictitious information.

(4) That respondent did not render any legal service for or on behalf of Paul Hjelm; that despite numerous demands by Paul Hjelm to return the $1,000, respondent did not refund it until Paul Hjelm was forced to retain other counsel, and after several months respondent did repay the money.

In connection with the *Hjelm* charge, the referee found in substance as follows:

(1)  That respondent is an attorney at law, duly admitted and licensed to practice in the State of Minnesota, and has been engaged in the practice of his profession in the city of Minneapolis since May 29, 1942.

(2)  That early in December 1957 Paul Hjelm consulted respondent for the purpose of having respondent represent him in a criminal matter in Federal District Court; that Clifford and David Hjelm, Paul's brothers, and several other persons were also being investigated by the Federal authorities in connection with certain Federal Housing Administration loans obtained from banks in the St. Paul and Minneapolis area, but no formal charges had been made at that time against any of said persons. The referee also found that respondent agreed to represent Paul Hjelm in the matter.

(3)  That Paul Hjelm consulted respondent again at his office on or about Saturday, January 18, 1958, at which time respondent told Paul that there was a charge made against him and demanded a fee of $1,000 to be paid before the following Tuesday, January 21, or respondent would not represent him.

(4)  That on January 18, 1958, respondent received copies of informations against seven persons by mail from the United States district attorney's office but there was no information received against Paul Hjelm.

(5)  That on Sunday morning, January 19, 1958, respondent prepared a false and fictitious information in his office in Minneapolis as follows:

"UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION
No.———

"UNITED STATES OF AMERICA　　　　　　　　　Plead Guilty

Vs.　　　　　　　INFORMATION
18 U. S. Code, Sec 1010

PAUL HJELM

"The united States attorney charges:

"On or about the 1st day of August, 1957, in the City of Minneapolis, County of Hennepin, State and District of Minnesota, one

PAUL HJELM

Knowingly and wilfully for the purpose of obtaining a loan and advance of credit from the First National Bank of Minneapolis, Minnesota, with the intent that such loan and advance of credit to be offered to and accepted by the Federal Housing Administration for insurance, and for the purpose of influencing the Federal Housing Administration to atke [sic] action accepting such loan for insurance, did make, pose, utter and publish a statement, to wit: that all articles and materials had been firnished [sic] and installed and the work satisfactorily completed on premises indicated in a Credit Application dated June 29, 1957, which had been fornished [sic] by said defendants to said Bank, knowing the said statement to be false in that no part of the work as described in the Credit Application dated June 29, 1957 had been performed now [sic] had any materials been furnished therefor and neither of said defendant owned the premises upon which said materials and work was to be furnished and performed, in violation of section 1010, Title 18 United States Code.

"United States Attorney"

(6) That in the afternoon of January 19, 1958, respondent showed the information to Clifford Hjelm and that Clifford Hjelm told Paul Hjelm about the information the same day; that on January 20, 1958, Paul Hjelm procured a cashier's check from the Produce Exchange Bank of St. Paul for $1,000 payable to himself and endorsed the same to respondent; that Clifford Hjelm delivered said check to respondent that same day; that after receiving the check respondent instructed Clifford to inform Paul that it would not be necessary for Paul to appear in court the following day, which message was delivered to Paul by his brother Clifford.

(7) That no criminal charge was ever made against Paul Hjelm by the United States district attorney and no information was ever prepared against him as respondent at all times well knew; and that upon discovering said fact Paul Hjelm demanded that respondent return the fee paid him in said matter; that respondent returned the fee in August 1958.

(8)   That on or about May 24, 1958, respondent stated to George MacKinnon, then United States district attorney, that Clifford Hjelm had told respondent that he, Clifford, was unable to make the $1,000 payment for fees that respondent was requesting and that Clifford further stated that if respondent would make up an information naming Paul as a defendant he, Clifford, could get money from Paul Hjelm; that respondent stated further that it had been Clifford Hjelm who suggested the preparation of an information charging Paul Hjelm because Paul had money; that a few days later respondent appeared as a witness in Federal District Court and testified that he had prepared the said information as a joke and that Clifford Hjelm had nothing to do with it; that respondent testified to the same effect before the referee herein.

The *Schmit* charge stated in substance:

(1)   That during the spring of 1958 Martin P. Schmit retained the respondent to defend him against the misdemeanor of tampering with an automobile; that for his services the respondent demanded and received the exorbitant and unconscionable fee of $1,100.

(2)   That during the fall of 1958 Martin P. Schmit retained respondent to represent him against a charge of abortion for an agreed fee of $1,000, and that thereafter respondent violated said agreement and charged his client a substantially higher fee.

(3)   That after Martin P. Schmit's conviction, respondent prevailed upon him to execute a document giving respondent power of attorney to handle his affairs during Schmit's confinement in Stillwater penitentiary; that thereafter respondent transferred and sold certain real and personal property belonging to Schmit and that despite numerous demands for an accounting of the proceeds of said sales, respondent did not provide Schmit with a satisfactory accounting.

In connection with the *Schmit* charge, the referee found:

(1)   That in March 1957 Martin P. Schmit was convicted in the municipal court of Minneapolis of the crime of tampering with an automobile and sentenced to serve 90 days in the workhouse; that execution of the sentence was suspended and defendant released on

probation; and that one Parker, an attorney at law, represented the defendant in said matter.

(2)   That in May 1957 Martin P. Schmit was arrested and held on an open charge on suspicion of abortion; that respondent called on him at Minneapolis General Hospital and was retained to represent him for a fee of $1,000, which was paid; that respondent commenced habeas corpus proceedings in the District Court of Hennepin County to secure Schmit's release, which proceedings were dismissed on the ground that his probation had been revoked by the municipal court, and Schmit was committed to the workhouse.

(3)   That no formal abortion charge was ever made against the said Martin P. Schmit but a number of abortion instruments held by the police department were destroyed with Schmit's consent.

(4)   Thereafter, for a further fee of $100 respondent succeeded in having the said workhouse sentence changed to a fine of $100; that the fine was paid and defendant released from custody.

(5)   That in July 1958 Martin P. Schmit was arrested on an abortion charge, retained respondent to represent him, and paid respondent a fee of $1,000; that respondent urged Schmit to plead guilty but he refused; that respondent then demanded an additional fee of $1,500.

(6)   That on September 29, 1958, Martin P. Schmit gave respondent a power of attorney to sell and dispose of his real estate and personal property; that said property was sold during the fall and early winter of 1958; that respondent admitted at the hearing before the referee that he still had in his possession the sum of $719.82 belonging to Schmit; that no complete accounting was ever made by respondent although repeatedly demanded by said Schmit.

This court has already stated that it considers a proceeding instituted by the State Board of Law Examiners to discipline an attorney in a different light from an ordinary action. It is a proceeding sui generis. This rule applies also to proceedings such as this instituted by the Practice of Law Committee of the Minnesota State Bar Association.

A disciplinary proceeding is not the trial of an action or suit between adverse parties, but an investigation or inquiry by the court into the

conduct of one of its officers in order to determine his fitness to continue as a member of his profession. Although the exercise of disciplinary jurisdiction by the court is not to be encumbered by the technical rules and formal requirements of either criminal or civil procedure, nevertheless, in the conduct of a disciplinary inquiry by the court, it is essential that the requirements of due process of law be observed. With that end in mind, the charges of professional misconduct, though informal, should be sufficiently clear and definite, in the light of the circumstances of each case, to afford the respondent an opportunity to prepare and present his defense. The cases recognize that to take away an attorney's means of livelihood is a serious matter; hence, proof of wrongdoing must be cogent and compelling. On the other hand we have also stated that the furnishing of pertinent evidentiary facts is a duty which the respondent owes to the court, as well as to himself, to aid in effecting a full and fair investigation of the charges of professional misconduct. In re Application for Discipline of Rerat, 232 Minn. 1, 44 N. W. (2d) 273, and cases cited.

The real question before the court in such disciplinary matters is the fitness of the attorney to continue as a member of the legal profession. The test is whether the conduct of the attorney comes up to the standards set by the canons of ethics. In re Application for Discipline of Rerat, *supra*.

It will serve no useful purpose to go into further detail in connection with the charges and findings herein except to say that upon a careful consideration of the entire record we are satisfied that the findings of the referee justify a disbarment of the respondent.

In connection with the Hjelm charge, we would indeed have to be naive to accept respondent's explanation that the whole matter involving the preparation of the fictitious copy of the information was done merely as a joke; his own statements were in conflict in that connection. In any event, his actions in the matter constitute such reprehensible conduct as to necessitate his disbarment.

While the record in the Schmit case is different, it contains some unsavory fee situations and misconduct on the part of the respondent which we cannot condone. In addition we have a situation here where,

according to the record, after respondent had disposed of Schmit's property under power of attorney, it took repeated efforts to get him to submit an accounting to his client, which was not finally made until the hearing before the referee in these proceedings. When an attorney chooses to represent a defendant, however obnoxious the case may be, he at least owes his client the duty of accounting for any property or money trusted to him or under his control. This should be done without repeated requests from the client.

As a conclusion of law, respondent is disbarred.

Let judgment be entered forthwith disbarring Gordon C. Peterson, and striking his name from the roll of attorneys of this state.