## IN RE APPLICATION FOR DISCIPLINE OF WILLIAM EDWARD DREXLER.

188 N. W. (2d) 436.

June 18, 1971—No. 42153.

*Herbert C. Davis,* for petitioner.
*William E. Drexler,* pro se, and *Jerome Daly,* for respondent.

PER CURIAM.

This matter is before the supreme court on a petition by the State Board of Law Examiners for the disbarment of William Edward Drexler as an attorney at law in the State of Minnesota.[1] The Honorable James F. Murphy, judge of· the District Court of the Ninth Judicial District, was appointed referee. On August 21, 1970, he filed his findings and recommended that Drexler be disbarred or, in the alternative, sus-

[1] By order dated December 16, 1970, the functions of the Board of Law Examiners in this respect were assumed by the State Board of Professional Responsibility.

pended for a period of at least 2 years. On May 14, 1971, the matter was presented to the supreme court en banc. Drexler appeared and argued pro se. We hold that the record requires his disbarment, and it is so ordered.

Since his admission to the practice of law in October 1961, Drexler has pursued a course of professional conduct wholly inconsistent with the oath he took when he became an officer of the court.[2] The referee's findings disclose numerous instances of dilatory and evasive tactics, neglect of duty, and defiance of court rules and orders.[3] The findings support the conclusion that his unprofessional behavior was not simply the result of inadvertence, oversight, or procrastination but stemmed from a pattern of persistent and habitual misconduct.

### Jury tampering

The referee found that during a criminal trial he was conducting Drexler discovered that a friend of defendant knew one of the jurors. Thereafter, the friend attempted to influence the juror's decision. The juror promptly reported the matter to the trial court and was dismissed. Subsequently Drexler agreed to take a polygraph examination with respect to his participation in the affair. The operator of the test certified that the answers Drexler gave denying his implication were false. Judge Murphy found that Drexler knew of the plan to prejudice the juror and had encouraged the participants to carry out that course of action.

### Misrepresentation as to the effect of a divorce stipulation

In the course of representing one Raymond F. Johnston, Jr., Drexler induced his client's wife, Jean G. Johnston, to sign a stipulation for divorce by falsely representing that it dealt only with an action for separate maintenance. Without notice to Mrs. Johnston, Drexler thereupon obtained a default divorce for his client. The referee found that Mrs. Johnston, who had no attorney, would not have signed the stipu-

---

[2] "You do swear that you will support the constitution of the United States and that of the State of Minnesota, and will conduct yourself as an attorney and counselor at law in an upright and courteous manner, to the best of your learning and ability, with all good fidelity as well to the court as to the client, and that you will use no falsehood or deceit, nor delay any person's cause for lucre or malice. So help you God."

[3] In Knajdek v. West, 278 Minn. 282, 153 N. W. (2d) 846, Drexler was held in contempt for willfully failing to respond to an order requiring him to appear and explain why he refused to secure approval of a minor settlement. The conviction was reversed on procedural grounds.

lation had she been aware of its significance and that Drexler's conduct constituted a fraud on the administration of justice.[4] We concur in this conclusion. Canon 9, Canons of Professional Ethics of the American Bar Association, then in effect, prescribed counsel's duty as follows:

"* * * It is incumbent upon the lawyer most particularly to avoid everything that may tend to mislead a party not represented by counsel, and he should not undertake to advise him as to the law."

#### Converting assets over which the court retained jurisdiction

The most serious charge against Drexler stems from the deplorable and protracted litigation involving Faye Peterson and her husband, Palmer Peterson.[5] In anticipation of a divorce and for the purpose of thwarting his wife's legitimate claims to alimony and a property division, the defendant, Dr. Peterson, attempted to conceal his assets to put them out of his wife's reach. On December 4, 1964, the Hennepin County District Court entered an order dissolving trusts Peterson had created for that purpose and providing that the trustee distribute the assets "in accordance with the directions of this Court." In an accompanying memorandum the court stated:

"In view of the foregoing the trust in question should be set aside and the trust assets treated as assets of defendant Peterson, subject to the jurisdiction of this Court."

In defiance of that order, Dr. Peterson secured an assignment of the assets from the trustee and persuaded several brokers to dispose of

---

[4] In the appeal to this court, Johnston v. Johnston, 280 Minn. 81, 86, 158 N. W. (2d) 249, 253, we declined to set aside the decree but noted: "There is no doubt, nonetheless, that the conduct of plaintiff and his attorney in serving process immediately after the stipulation was signed in violation of its express terms and in the subsequent swift perfection of the divorce with all the attendant circumstances set forth above could support a finding of fraud."

[5] Peterson v. Peterson, 274 Minn. 568, 144 N. W. (2d) 597; Id. 278 Minn. 275, 153 N. W. (2d) 825; Id. 278 Minn. 432, 153 N. W. (2d) 830; Id. 278 Minn. 433, 153 N. W. (2d) 831; Peterson v. Bartels, 284 Minn. 463, 170 N. W. (2d) 572. In an opinion dealing with Dr. Peterson's bankruptcy, Judge Blackmun, now Mr. Justice Blackmun, observed (Peterson v. Peterson [8 Cir.] 400 F. [2d] 336, 344):

"* * * Irrespective of where the fault lies, we wish that there were some way in which we could be instrumental in bringing this enduring controversy and bitterness to a well-deserved termination before the parties suffer emotional exhaustion and financial destruction."

trust securities for the purpose of converting them into cash. One of such checks contained a forged endorsement of the trustee.

Drexler actively participated in this entire process. He contends that he was unaware of the provision retaining jurisdiction in the court and asserts that he was misled by Dr. Peterson into believing that the proceeds of the sales were to be used for settling Mrs. Peterson's claims. The referee was not persuaded by this representation, nor are we. He found that Drexler intentionally violated the order of the court.

### Concealing and diverting assets

Notwithstanding an order entered by the district court on November 5, 1964, directing that Dr. Peterson's accounts receivable be sequestered, administered, and collected under the direction of the court as receiver, Drexler on December 10, 1964, secured a post office box to which payments of Dr. Peterson's accounts receivable were subsequently mailed. On two occasions, by court order, the contents of the box were impounded. The referee found that Drexler had secured the box for the purpose of diverting funds over which the court had reserved jurisdiction for future distribution.[6]

### Conclusions

The referee concluded that the activities of Drexler were willful and deliberate, in violation of the ethics of the legal profession, and destructive of the profession's public reputation and trust. He was of the opinion that Drexler does not possess the moral qualifications to continue in the practice of law. We agree.

Drexler's justification for his conduct is the contention that none of the matters complained of involved infidelity to his clients. Although he denies fraud, he asserts that if such there be, it was committed in his clients' interests and not to their detriment. We need not expand on this distorted and insensitive concept of the obligation he owed his profession, the courts, and the public. It is enough to quote Canons 15

---

[6] As a result of the violation of its orders, the district court found Drexler in contempt and sentenced him to 6 months' imprisonment and a $250 fine. That conviction was reversed on procedural grounds in Peterson v. Peterson, 278 Minn. 275, 153 N. W. (2d) 825.

A civil action against Drexler for his participation in concealing her husband's assets was brought by Mrs. Peterson. After selecting a jury, Drexler withdrew from the trial. The jury thereupon found Drexler guilty of fraud and assessed damages against him in the sum of $35,500. That judgment was also reversed on procedural grounds. Peterson v. Bartels, 284 Minn. 463, 170 N. W. (2d) 572.

and 16, Canons of Professional Ethics of the American Bar Association, which then obtained:[7]

"* * * The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client.

"A lawyer should use his best efforts to restrain and to prevent his clients from doing those things which the lawyer himself ought not to do, particularly with reference to their conduct towards Courts, judicial officers, jurors, witnesses and suitors. If a client persists in such wrongdoing the lawyer should terminate their relation."

The misconduct to which we have referred reflects a basic lack of integrity in the performance of professional duties which renders respondent unfit to continue in the practice of law. He is accordingly disbarred.

Disbarred.

---

[7] Subsequently, we adopted a new Code of Professional Responsibility (Final Draft, July 1, 1969), American Bar Association Special Committee on Evaluation of Ethical Standards. Canon 7, DR 7-102(A) provides in part:

"In his representation of a client, a lawyer shall not:

* * * * *

"(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent."

Canon 7, DR 7-102(B) provides in part: "A lawyer who receives information clearly establishing that:

"(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal."