332 N.W.2d 10 (1983)
In the Matter of the Petition for Disciplinary Action against William A. PETERS, a Minnesota Lawyer.
No. C7-82-467.
Supreme Court of Minnesota.
March 25, 1983.
*11 Michael J. Hoover, Director, and Richard J. Harden, Lawyers Professional Responsibility Board, St. Paul, for petitioner.
William A. Peters, Forest Lake, pro se.
Heard, considered and decided by the court en banc.
PER CURIAM.
The disciplinary proceedings against attorney William A. Peters reached this court upon petition of the Lawyers Professional Responsibility Board alleging ten complaints of professional misconduct and seeking disbarment. Respondent has failed to file an answer to the petition as required by Minn.R.Law.Prof.Resp. 13(a). In re Larson, 324 N.W.2d 656, 658 (Minn.1982). The allegations of the petition are therefore deemed to be admitted pursuant to Minn.R. Law.Prof.Resp. 13(c). We conclude that the admitted charges justify disbarment, but in lieu of outright disbarment we order an indefinite suspension.
Following an investigation of complaints filed against respondent with the Lawyers Professional Responsibility Board, the director, pursuant to Minn.R.Law.Prof.Resp. 8(c)(3), determined that discipline was warranted. Thereafter, pursuant to the rules, the director prepared charges of unprofessional conduct and duly notified respondent of the charges and that a hearing on the charges would be held before a panel of the Lawyers Professional Responsibility Board on February 19, 1982. The panel hearing *12 was scheduled to commence on that day at 9 a.m. together with two other matters. The panel proceeded to hear one of the other matters first. The respondent was present at 9 a.m. While awaiting the commencement of his hearing, the respondent and a staff attorney in the office of the director arrived at a stipulation.[1] The prior hearing continued until after 3 p.m. Claiming he had borrowed a car to attend the hearing and would have to return it to its owner before 3 p.m., the respondent then left the hearing room and never returned, although he had been advised by the director that it was his responsibility to remain. The panel finally reached respondent's matter at approximately 7 p.m. The staff attorney advised the panel of the oral stipulation, and further advised the panel that if respondent had testified at the panel hearing he would have admitted certain facts concerning the charges.[2]
*13 Following the February 19, 1982, hearing, the panel instructed the director to file in this court a petition for disciplinary action. On May 3, 1982, we ordered respondent to show cause before this court why he should not be immediately suspended from the practice of law. Following the show cause hearing in this court at which respondent appeared pro se, by order filed May 19, 1982, we ordered the immediate suspension of respondent Peters pending final disposition of the proceedings and appointed the director of Lawyers Professional Responsibility as interim trustee pursuant to Minn. R.Law.Prof.Resp. 27, granting him certain powers and duties in connection with unfinished client business of the respondent in the files and records of the respondent. During this interim trusteeship, a majority of respondent's "open" files have been returned to respondent's former clients or their agents.
Although respondent, as indicated, did appear on the day of the panel hearing, did appear in this court at the May 18, 1982, show cause hearing, and did appear in this court at the January 4, 1983, final hearing, the respondent has failed to file an answer to the petition as required by Minn.R.Law. Prof.Resp. 13(a).
In January 1982, respondent was evicted from his law office. Prior to eviction, he was afforded the opportunity to remove his client files from the office but failed to do so, and eventually most of the client files were removed by the Ramsey County sheriff to a storage facility. At no time has respondent sent his former clients any communication explaining the situation or informing the clients how he could be contacted concerning their files. For substantial periods of time, respondent was unavailable to clients trying to reach him by telephone. Even after the director was appointed interim trustee by this court, respondent Peters failed to answer communications from the director concerning those matters. This conduct, in essence, constituted an abandonment by respondent of his practice and a violation of Minn.Code Prof. Resp. DR 1-102(A)(1), DR 1-102(A)(5), DR 1-102(A)(6), DR 6-101(A)(3), DR 7-101(A)(2) and DR 7-101(A)(3).
In July 1980, a Mr. and Mrs. W.A. Lundeen paid respondent $300 to institute adoption proceedings for a child who was then the Lundeens' ward. No adoption proceeding was initiated although respondent had obtained consent of the natural mother. A year and a half later respondent received a certified letter from the Lundeens requesting return of their file and refund of the retainer. Respondent neither returned the file nor refunded the fee nor discussed the matter with the Lundeens. Charles Langer, an attorney retained by the Lundeens, during January and February of 1982 left telephone messages for respondent seeking return of the Lundeens' file. Although respondent eventually promised to forward the file, he never did so, nor did he file any annual reports for the guardianship of the ward for the years 1980 and 1981. This conduct violated Minn.Code Prof.Resp. DR 1-102(A)(1), DR 1-102(A)(5), DR 1-102(A)(6), DR 2-106(A), DR 6-101(A)(3), DR 7-101(A)(2), DR 7-101(A)(3) and DR 9-102(B)(3) and Opinion 11 of the Lawyers Professional Responsibility Board.
In April 1981, Steven Ginkel paid respondent $150 to defend a civil lawsuit. Respondent filed an answer but failed to notify *14 his client that the opponent had served interrogatories. Respondent took no steps to procure answers thereto. For several months Ginkel made many attempts to call respondent by telephone and left messages for return calls. Respondent never returned the calls nor did he answer written requests of the client to be updated on the progress of the case. Respondent's conduct was in violation of Minn.Code Prof.Resp. DR 1-102(A)(1), DR 1-102(A)(5), DR 1-102(A)(6), DR 6-101(A)(3), DR 7-101(A)(2) and DR 7-101(A)(3).
Respondent represented Gordon Berglof in a marriage dissolution. He and Mr. Berglof met in his office, contacted the opposing attorney and reached a tentative settlement. Respondent was to draft a stipulation, but he failed to do so; nor did he discuss the case with Mr. Berglof. Berglof was unable to reach respondent by telephone either because the respondent's telephone had been disconnected or because respondent failed to return calls. Respondent's conduct violated Minn.Code Prof. Resp. DR 1-102(A)(1), DR 1-102(A)(5), DR 1-102(A)(6), DR 6-101(A)(3), DR 7-101(A)(2) and DR 7-101(A)(3).
In March 1979, respondent was retained by Rudolph and Barbara Cooper. Respondent filed suit on behalf of the Coopers. Settlement was effectuated with all defendants except one, and a default judgment was entered against that party. Respondent was retained to try to collect that default judgment. He failed to take steps to do so, failed to keep the Coopers advised as to the status of the case and failed to return telephone calls from the Coopers and failed to advise the Coopers how he could be reached. This conduct violated Minn.Code Prof.Resp. DR 1-102(A)(1), DR 1-102(A)(5), DR 1-102(A)(6), DR 6-101(A)(3) and DR 7-101(A)(2).
In 1975, respondent was the attorney for the estate of Lucille Boyer's deceased husband. She and her husband had owned real estate in joint tenancy. Respondent failed to prepare and record an affidavit of survivorship necessary to transfer title to the sole name of Lucille Boyer. She sought to sell the property in 1982. Because of respondent's failure she had to incur additional attorney fees. She called respondent's office to get her file but only got a recorded message that the phone had been disconnected with no message how respondent might be reached. Respondent's conduct violated Minn.Code Prof.Resp. DR 1-102(A)(1), DR 1-102(A)(5), DR 1-102(A)(6), DR 6-101(A)(2), DR 6-101(A)(3) and DR 7-101(A)(2).
From 1975 through 1981 on a number of occasions respondent had requested services of court reporters, investigators, process servers and secretaries in connection with his law practice. At the time of contracting for such services, respondent did not inform the service providers in writing that he would not be personally liable for payment for such services and, in fact, he did not pay for the services. His conduct violated Minn.Code Prof.Resp. DR 1-102(A)(1) and DR 1-102(A)(6) and Opinion 7 of the Lawyers Professional Responsibility Board.
On October 1, 1980, respondent was notified of an ethics complaint filed against him and was instructed to respond in writing within 10 days. When he failed to do so, the investigator for the district ethics committee again wrote respondent requesting a written response. By telephone conference on October 22, 1980, the investigator again requested a written answer, and respondent agreed to a November 5, 1980, deadline. Written response was not made by respondent until November 18, 1980. Another ethics complaint was filed against respondent in March 1981. Again he failed to file a timely written answer, but one was eventually received. Respondent's conduct violated Minn.Code Prof.Resp. DR 1-102(A)(1), DR 1-102(A)(4), DR 1-102(A)(5) and DR 1-102(A)(6). See In re Cartwright, 282 N.W.2d 548 (Minn.1979).
In June 1980, Marion Husebye paid respondent $500 to commence a legal action to secure visitation rights with her grandson. Respondent failed either to contact his client to secure information requested by the Ramsey County Department of Court Services, or reply to the request for such *15 information. Moreover, during the course of the proceedings respondent assured his client he would arrange for a court hearing in May of 1981, but he failed to do so. Disagreements arose between respondent and his client when she complained about his inactions and requested her file. This eventually resulted in respondent physically ejecting the client from his office. Although respondent eventually returned the file to Ms. Husebye, he did not return the retainer paid by her nor did he provide her with an accounting of fees earned. Respondent's conduct violated Minn.Code Prof. Resp. DR 1-102(A)(1), DR 1-102(A)(5), DR 1-102(A)(6), DR 6-101(A)(3) and DR 9-102(B)(3).
Since 1974, respondent has represented Kenneth Barnett in a child support case. Barnett paid respondent over $1,000 for representation. In the course of handling the matter in December 1981, respondent neglected to file an affidavit resulting in a 2-month delay in the hearing. Between December 8, 1981, and February 1, 1982, respondent did not communicate with Barnett. Barnett or his wife attempted to call respondent on the telephone to inquire about the progress of the matter, but heard a recorded message that the telephone had been disconnected and that respondent could be reached at another number. When a call was placed to the number given, the client was informed that respondent could not be reached at that number but that he would occasionally call for messages. This failure to follow client's orders and failure to advise his clients or make known to the clients how or where he could be contacted violated Minn.Code Prof.Resp. DR 1-102(A)(1), DR 1-102(A)(5), DR 1-102(A)(6), DR 2-106(A), DR 6-101(A)(3), DR 7-101(A)(2) and DR 7-101(A)(3).
All of the foregoing deemed admitted charges indicate a complete abandonment by respondent of his clients, and a complete disregard for the clients' interests as well as displaying his present admitted inability to represent clients.[3]
Although respondent never did serve a written answer as provided by the Rules on Professional Responsibility, he did file a brief with this court prior to the final hearing.[4] In his brief and at oral argument, for the first time respondent asserted that this court should remand this matter to the Lawyers Professional Responsibility Board for further proceedings. He there claims he was denied procedural due process by the Board (1) when it refused to grant him a continuance of the panel hearing, (2) when it did not hear his case promptly on February 19, 1982, reaching it some 10 hours after it was originally scheduled, (3) when it denied an alleged request he made for appointed counsel, (4) when the complaint charged him with non-payment for professional services ordered by him, and (5) due to the failure of the director to read the stipulation entered into on February 19, 1982, to the panel.
Respondent claims that in the first week in February 1982, he requested from the director a continuance of the proceedings scheduled to be heard before the panel of the Lawyers Professional Responsibility Board on February 19, 1982. Assuming such a request was made, it is clear that failure to grant it was discretionary with the Board, and resulted in no substantial prejudice to the respondent. This court takes judicial notice that members of the Lawyers Professional Responsibility Board sit on panels to evaluate complaints and determine whether there is probable cause to proceed with disciplinary action. These panel members are all volunteers, are uncompensated for their time, consist of both lawyers and lay people, and reside in all parts of the State of Minnesota. Because *16 of those facts, continuances of panel hearings are rarely given. In this case, approximately a month before the date of the scheduled panel hearing respondent Peters was given written notice of the charges and the date set for the panel hearing. The record before us shows no facts that would lead us to conclude that a failure to grant a continuance was a breach of discretion on the part of the director. Moreover, the facts show that the respondent was not prejudiced. He did appear at the time and place of the panel hearing. While the hearing on respondent's matter was delayed because of the progress of another matter scheduled for the same day which was heard first by the panel and which took longer than expected, respondent and a representative from the director's office entered into a stipulation in which respondent essentially admitted the charges and agreed not to oppose a motion by the director for the panel to instruct the director to file a petition for immediate suspension, which stipulation was presented to the panel by the representative of the director on February 19, 1982. Respondent has failed to show any prejudice to him because of refusal to continue the panel hearing to a later date.
In his brief, respondent claims he requested appointed counsel to represent him in these proceedings at a meeting with the representative of the director early in February 1982. Other than this allegation in the brief, there was nothing in the record to indicate that he made such a request. Likewise, there is nothing in the record to show that he presented to the Lawyers Professional Responsibility Board any detailed evidence showing that he was, in fact, indigent. We noted in In re Rerat, 224 Minn. 124, 127, 28 N.W.2d 168, 172 (1947), that an action for discipline of an attorney was neither a criminal nor a civil procedure, but rather that it is a proceeding sui generis, the object of which is not the punishment of the lawyer but the protection of the public. A disciplinary proceeding is an inquiry or investigation by this court into the conduct of one of its own officers to determine his or her fitness to continue as a member of the profession or to determine whether any or lesser sanctions should be imposed for violation of the disciplinary rules.[5] However, respondent contends that since we held in Hepfel v. Bashaw, 279 N.W.2d 342 (Minn.1979), that in an action of a civil nature to establish paternity the putative father was entitled to appointed counsel when the complainant is represented by the county attorney at public expense, respondent should be entitled to appointed counsel in this disciplinary matter because the director and attorneys handling disciplinary matters are salaried employees of the Lawyers Professional Responsibility Board.
Respondent's reliance on Hepfel is misplaced. We there observed that the nature of a paternity action instituted by a county attorney at the behest of county and state welfare authorities is primarily financial. Under those circumstances, the determination of paternity with care and precision is, at best, secondary. Nevertheless, the consequences of such action to the putative father entail not only financial obligations of support, but also potential burdens on his estate with the child's claim to inheritance, workers' compensation benefits and insurance proceeds. Moreover, if a determination of paternity is made, there hovers above the defendant a potential loss of liberty since he may be subjected to jail for criminal non-support. Id. at 345. The child likewise has a great stake in the determination. *17 The stake involves not only his right to receive support and other benefits from the father, but the possibility that the adjudicated parent under certain circumstances may seek his custody and that the adjudicated parent's consent must be obtained before the child can be adopted and perhaps other consequences. Id. at 346. Accordingly, we held under this court's "supervisory power to insure the fair administration of justice," id. at 345 n. 5 (quoting State v. Borst, 278 Minn. 388, 397, 154 N.W.2d 888, 894 (1967)), that in a paternity action where the complainant is represented by the county attorney, counsel must be provided to an indigent defendant. In so doing, we rejected the "dubious contention" that provision of counsel in such cases was constitutionally mandated by the equal protection and due process guarantees of the federal and state Constitutions. Id. at 344. Moreover, we noted that our holding in that situation was not precedential in other "civil" cases. Id. at 348.
A disciplinary action is clearly distinguishable. In the first place, this is not an adversary proceeding in the same sense as a civil paternity action. In re Rerat, 224 Minn. 124, 128, 28 N.W.2d 168, 172 (1947); In re Daly, 291 Minn. 488, 490, 189 N.W.2d 176, 178 (1971). In a disciplinary action the petitioner is not represented by counsel paid out of general tax revenues.[6] The object of the proceeding against the attorney is not primarily in the nature of a collection action but rather one to protect the public. While discipline in the form of reprimand, suspension or disbarment certainly has consequences affecting a respondent attorney's privilege of pursuing a legal career, otherwise it does not affect claims of others to his property. Discipline in any form does not pose the potential penalty of incarceration. Since criminal sanctions cannot be invoked directly or potentially as the result of a disciplinary proceeding, criminal safeguards do not apply. In re Hanratty, 277 N.W.2d 373, 376 (Minn.1979). Nevertheless, this entire proceeding has been structured by rules affording attorneys all due process rights. The respondent in this and every other disciplinary case is a licensed attorney. In this case, the respondent did not avail himself of the many protections afforded by the rules. He failed to interpose an answer; while he did appear at the time of the panel hearing, he left before the matter was heard and thereby waived his right for appearance; he consented pro se to his interim suspension before this court; he did file a brief pro se in this court, but it was filed late. We conclude that in this proceeding respondent Peters was not entitled to appointed counsel.
Finally, respondent contends that Complaint No. 7 and, by inference, Complaint No. 8[7] charge him with non-payment of bills. He asserts non-payment of bills is not a ground for disciplinary action. An examination of the petition clearly indicates that respondent was not charged with non-payment of those bills, but rather with not informing the service providers in writing at the time of the request for such services that he, Peters, would not be personally responsible for payment. Having not so informed the service providers, he becomes liable therefor. Amended Opinion 7, Lawyers Professional Responsibility Board, adopted October 26, 1979. Respondent's contention in this regard is clearly without merit.
The director has recommended disbarment. We agree that these deemed admitted charges fully justify an order of disbarment. Respondent has orally before this court admitted that he was not in "a posture where I can reasonably or foreseeably represent clients." We have been informed that during the time most of these complaints arose respondent went through a protracted marital dissolution proceeding. He claims this resulted in his seeking psychiatric *18 consultation. So far as the limited record shows, prior to the onset of his marital difficulties respondent was a competent and able attorney. The record clearly shows that at the present time the respondent is not in a position to represent clients and that for the protection of the public he should be precluded from doing so. However, he may once again be restored as a worthy and contributing member of the Minnesota bar.
Accordingly, respondent William A. Peters is indefinitely suspended from the practice of law. He may petition for reinstatement within 3 years only upon the following conditions being met:
1. That he receive psychological or psychiatric treatment;
2. That he seek to rehabilitate himself so that he may competently and responsibly represent clients;
3. That he make restitution to all clients for any losses they may have sustained by virtue of his practice and abandonment of his law practice;
4. That he pay all service providers for services rendered at his request in connection with his law practice;
5. That he make available to the director of Lawyers Professional Responsibility all records requested by the director pertaining to complaints filed against him including the complaints filed against him constituting the charges which are the subject matter of this petition plus any other complaints arising out of his law practice which may surface in the future;
6. That he reimburse the director of Lawyers Professional Responsibility for all costs of this proceeding including the costs which the director incurred as interim trustee in the total amount of $500.
If respondent has not petitioned this court through representation by counsel showing this court that he has complied with all of the foregoing conditions within the time limited, the director may petition this court to make the indefinite suspension permanent in the form of disbarment.
NOTES
[1] The terms of the stipulation as stated by the staff attorney were:

A. Respondent and the Director would stipulate to the panel instructing the Director to file a petition for disciplinary action in the supreme court without a recommendation as to the ultimate disposition pursuant to Rule 9(e)(4), Rules on Lawyers Professional Responsibility, hereinafter RLPR.
B. Respondent would not oppose Director's motion for an instruction from the panel to file a petition for respondent's immediate suspension from the practice of law under Rule 16, RLPR.
C. Respondent would testify, orally put this stipulation on the record, and admit certain facts alleged by the Director.
[2] The affidavit in the record signed by the staff attorney indicates he advised the panel that had respondent testified he would have admitted:

A. Respondent does not presently maintain an office for the practice of law. He does have a telephone number where messages are taken, but does not call that number for those messages as often as once a day.
B. In January, 1982, respondent was evicted from his office in the Pioneer Building for non-payment of rent. Respondent was given a reasonable opportunity to remove from the office all of his office files, but did not do so. On January 20, 1982, a writ of restitution was issued and the Ramsey County sheriff moved the contents of respondent's office, including respondent's client files, to Ballard and Skellet Moving and Storage, 2020 West 7th Street, St. Paul, Minnesota, at the direction of respondent's landlord. Most of respondent's client files are not currently in his possession or in the possession of an agent or employee of respondent. Respondent does not currently have in his possession or control the case files of the following clients who have filed complaints with the Lawyers Professional Responsibility Board: Steven Ginkel, Gordon Berglof, Rudolph and Barbara Cooper, Marion Husebye, and Wayne A. and Laurene A. Lundeen.
C. Respondent's office telephone was disconnected for non-payment of the bill on or about December 22, 1981, and not reconnected until approximately January 5, 1982. During this period, respondent did not send letters to any of his clients explaining the situation and informing them how he could be contacted. During this period, respondent did not speak with Steven Ginkel, Gordon Berglof, Rudolph and Barbara Cooper, and Wayne A. and Laurene A. Lundeen, all of whom were Respondent's clients on pending matters and all of whom tried to reach respondent and could not because the telephone was disconnected.
D. Respondent is currently closing his law practice and is not taking any new cases. Respondent has indicated an intention to transfer most of his open cases to other lawyers, but has not made specific arrangements to do so.
E. On April 25, 1981, Steven Ginkel paid respondent $150 to defend Ginkel in a civil lawsuit. Respondent has filed an answer. On or about September 11, 1981, the attorneys for the opposing parties served interrogatories on respondent. Respondent has not served an answer to those interrogatories on the opposing attorneys.
F. Respondent represents Gordon Berglof in a marriage dissolution case. On December 4, 1981, Berglof and respondent met in respondent's office. Respondent and opposing counsel reached a tentative settlement and respondent agreed to draft a stipulation. Respondent has not drafted the stipulation and has not discussed the case with Berglof since December 4, 1981. Berglof's case is still pending, but Berglof's file is in storage and not in the control of respondent.
G. Respondent admits all of the allegations of paragraph A of the fifth count of the charges except he denies that any money is owed to Minnesota Attorney Service Bureau.
H. Respondent was paid $300 on July 24, 1980, by Wayne A. and Laurene A. Lundeen to institute adoption proceedings for a child who is currently the Lundeens' ward. More than one year ago, respondent obtained the consent to adoption of the natural mother, but no adoption proceeding has been commenced. On December 21, 1981, respondent received a certified letter from the Lundeens requesting the return of their file and a refund of their retainer fee. Respondent has not returned the file, refunded the retainer, nor discussed the case with the Lundeens. Beginning in January, 1982, respondent received telephone messages from Charles Langer. On or about January 25, 1982, respondent knew Langer was an attorney representing the Lundeens and trying to obtain their file. Respondent did not discuss the matter with Langer until February 19, 1982, at which time he promised to deliver the file to Langer within one week. The file is in storage and is not under the possession or control of respondent.
I. Respondent entered into the stipulation described in paragraph 4 freely and voluntarily, without any coercion or duress, and with no commitment on the part of any court, Board, committee, or other persons concerning his right to practice law.
[3] In oral presentations to this court, both on May 18, 1982, and January 4, 1983, respondent admitted he presently or in the foreseeable future could not competently represent clients.
[4] The recitation of the charges indicates that respondent was dilatory in timely making appearances and filing papers. This same conduct is noted by the fact that his brief was filed 3 days late as well as the fact that respondent was over an hour late in appearing in court for oral argument on January 4, 1983.
[5] Since a disciplinary matter is not criminal in nature, it is not covered by the Minnesota Rules of Criminal Procedure. But even under Minn.R.Crim.P. 5.02, subd. (3) and (4), an accused must show that he is financially unable to obtain counsel. In the comment to Rule 5.02 the advisory committee "strongly" recommends that certain standards be used as guidelines to determine whether an accused is entitled to appointed counsel at public expense. Although this matter is not civil in nature, our case of Hepfel v. Bashaw, 279 N.W.2d 342 (Minn.1979), indicated the same standards should be used in a "civil" case to determine paternity. While Minn.Stat. § 563.01 (1982) authorizes a court to direct court officers to afford certain services without pre-payment of statutory fees, etc., it does not authorize appointment of an attorney in "civil" cases.
[6] All expenses of the Lawyers Professional Responsibility Board, including salaries for its staff attorneys, are paid from the annual license fees of attorneys of Minnesota. No part of its funds comes from general tax revenues.
[7] As indicated, these complaints relate to respondent's requesting auxiliary services from court reporters, investigators and others.