**PRODUCTION CREDIT ASSOCIATION OF MANKATO, Respondent,**

v.

**Lester BUCKENTIN, et al., Petitioners, Appellants.**

**Myron HARBERTS, et al., Petitioners, Appellants,**

v.

**PRODUCTION CREDIT ASSOCIATION OF WORTHINGTON, Minnesota, et al., Respondents.**

No. C7–86–1255, C2–86–1356.

Court of Appeals of Minnesota.

Dec. 2, 1986.
Review Granted Jan. 27, 1987.

Robert M. Halvorson, New Ulm, for respondents.

Robert A. Nicklaus, James M. Corum, Chaska, for appellants.

Considered and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Appellants challenge respective trial court orders disqualifying attorney James Corum from representing them in their farm loan law suits. Respondent production credit associations challenge those same orders which fail to disqualify the law firm where Corum is of counsel. We reverse.

## FACTS

James Corum was hired in November 1968 as a senior attorney by the Federal Intermediate Credit Bank (FICB) in the Seventh Farm Credit District headquartered in St. Paul. He was appointed FICB general counsel in 1969 and remained in that general position until fired by the FICB in September 1984.

Corum subsequently joined, as of counsel, the law firm of Nicklaus & Fahey. During that time, Corum became involved in the representation of appellants Lester and Marlys Buckentin and Myron and Lois Harberts. Respondent Production Credit Association (PCA) of Mankato sued the Buckentins in June 1985 seeking replevin regarding a loan default. Although the Buckentins were originally represented by other counsel, the record indicates Corum and his law firm began representation by October 1985. In March 1986, the Harberts sued respondent PCA of Worthington regarding administration of their loan. Counsel from Nicklaus & Fahey signed that complaint.

Respondents moved to disqualify Corum and Nicklaus & Fahey from representation in these matters based on Corum's relationship with PCAs during his term as FICB general counsel. PCA of Worthington filed its notice of motion and motion May

19, 1986; PCA of Mankato on May 21, 1986. Both motions were heard on June 11, 1986. In similar orders, both motions were granted regarding Corum: in the Buckentins' case by order filed July 3, 1986 and in the Harberts' case by order filed July 16, 1986. Both orders denied respondents' requests to disqualify Nicklaus & Fahey, but required the law firm to disassociate itself from Corum in its representation of appellants.

Appellants sought discretionary review of their respective orders. This court by order dated August 21, 1986 granted and consolidated these petitions. Both respondent PCAs filed notice of review regarding removal of Nicklaus & Fahey.

## ISSUES

1. Did the trial courts abuse their discretion in disqualifying Corum?

2. Did the trial courts abuse their discretion in not disqualifying Nicklaus & Fahey?

## ANALYSIS

In reviewing an order granting disqualification of counsel, this court is limited to determination of whether the trial court abused its discretion. *See M.M. v. R.R.M.,* 358 N.W.2d 86, 90 (Minn.Ct.App.1984). Appellants claim the trial courts abused their discretion because (1) no attorney-client relationship existed between Corum and the PCAs, (2) the involved litigation is not substantially related to Corum's previous work with the FICB and (3) respondents' motions to disqualify are barred by laches.

1. *Attorney-Client Relationship.* Appellants claim no attorney-client relationship existed between Corum and the PCAs because that relationship was not confidential. They assert Corum's duty was to report to the FICB president regarding PCA activities. Appellants insist the relationship between the FICB and the PCAs was adversarial in nature, not fiduciary, because of the FICB's supervisory role.

Appellants cite *Brown v. St. Paul City Railway Co.,* 241 Minn. 15, 62 N.W.2d 688 (1954) as stating a confidential relationship must exist between an attorney and his client. *Brown* involved admissibility of evidence allegedly protected by attorney-client privilege.

The fundamental flaw in [appellants] position is a confusion of the attorney-client evidentiary privilege with the ethical duty to preserve a client's confidences. * * * [T]he ethical duty is broader than the evidentiary privilege: "This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge." ABA Code of Professional Responsibility, EC 4–4 (1970). "A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client...." *Id.* EC 4–5. The use of the word "information" in these Ethical Considerations as opposed to "confidence" or "secret" is particularly revealing of the drafters' intent to protect all knowledge acquired from a client, since the latter two are defined terms. *See, id.,* DR 4–101(A). Information so acquired is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship. This is true without regard to whether someone else may be privy to it.

*Brennan's Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 172 (5th Cir.1979) (citation and footnote omitted).

The FICB financially assists PCAs in providing money to farmers. The record indicates Corum as FICB general counsel provided legal advice to PCAs and their own counsel regarding PCAs' role in the lending process. Although the relationship was not an intimate one, Corum did provide legal guidance regarding the PCAs' operations. There is no evidence that Corum was ever paid directly by the PCAs or individually represented any PCA. All PCAs had their own local or regional counsel who represented the PCAs without any supervisory or veto power by Corum. Whether that relationship prevents Co-

rum's representation in these instant cases is a separate issue.

2. *Substantially Related Matter.* The Minnesota Rules of Professional Conduct state;

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation * * *.

Minn.R. Professional Conduct 1.9 (emphasis added); *see National Texture Corp. v. Hymes,* 282 N.W.2d 890, 894–95 (Minn. 1979) ("lawyers should avoid even the appearance of conflict"). The comment to rule 1.9 provides guidance regarding whether Corum's current representation involves a substantially related matter.

> The scope of a "matter" for purposes of Rule 1.9(a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, *a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.* * * *
>
> Information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client.

Minn.R. Professional Conduct 1.9 comment (emphasis added).

Several PCA chief executive officers, including those of Mankato and Worthington, signed affidavits stating Corum participated in PCA seminars regarding:

a. PCA's potential liability for negligence on the part of its loan officers and other personnel, including potential liability for negligent lending decisions;

b. Rights of PCA member-borrower including rights to forebearance, rights to appeal adverse credit decisions and other rights;

c. Contract rights of borrowers, including implied contracts to continue a lending relationship between PCA and member-borrowers;

d. Collections and workout agreements involving PCA and member-borrowers;

e. Security arrangements, perfection of UCC liens, real estate mortgages and other security devices; and

f. The overall, general legal relationship between PCA and its member-borrowers.

These seminars involved general loan administration. The record fails to indicate any specific connection between Corum and appellants while Corum was employed by the FICB. He apparently had no personal knowledge regarding administration of appellants' individual loans. Because a close and specific connection between Corum's previous and current work does not exist, we conclude his representation of appellants is not a substantially related matter and the trial courts erred in disqualifying Corum.

While we strongly oppose impropriety of representation, to disqualify Corum here would significantly serve to deprive Corum of his right to earn a living. He was terminated by the FICB and probably has little chance of using his 16 years of farm credit expertise to represent lenders. To disqualify him here would prevent Corum from representing borrowers. This result would create an undue hardship for Corum.

3. *Laches.* Because we conclude Corum was improperly disqualified, we need not reach appellants' laches argument.

Because we conclude Corum should not be disqualified, we naturally agree Nicklaus & Fahey should not be disqualified either. That part of the trial court orders prohibiting association between Corum and the law firm regarding these instant matters is reversed.

### DECISION

The trial court erred in disqualifying attorney James Corum and prohibiting his association with the Nicklaus & Fahey law firm in its representation of appellants.

Reversed.