PRODUCTION CREDIT ASSOCIATION OF MANKATO, petitioner, Appellant,

v.

Lester BUCKENTIN and Marlys Buckentin, Respondents.

Myron HARBERTS and Lois Harberts, Respondents,

v.

PRODUCTION CREDIT ASSOCIATION OF WORTHINGTON and Federal Intermediate Credit Bank of St. Paul, petitioner, Appellants.

No. C7–86–1255, C2–86–1356.

Supreme Court of Minnesota.

Aug. 14, 1987.

Robert M. Halvorson, New Ulm, for PCA of Mankato, PCA of Worthington, and FICB of St. Paul.

Scott J. Strouts and James M. Corum, Minneapolis, for Harberts and Buckentin.

## OPINION

KELLEY, Justice.

In each of two separate cases venued in different courts involving claims between local Production Credit Associations (PCA's), lenders, and farmer-debtors, each trial judge entered an order disqualifying attorney James Corum, a former senior attorney and general counsel for the St. Paul Federal Intermediate Credit Bank (FICB), from representing the farmer-debtors. The court of appeals reversed both trial courts.[1] We affirm the court of appeals' opinion insofar as it holds that Corum is not disqualified from representing the debtors in their legal disputes against the PCA's, but in the Harberts' case (No. C2–86–1356), we reverse the court of appeals and sustain the trial court holding that Corum be disqualified from representing the Harberts against the FICB in that action.

In creation of the national Farm Credit System, 12 U.S.C. §§ 2001–2260 (1982), the United States has been divided into 12 farm credit districts. The Seventh Farm Credit District covering several midwestern states is headquartered in St. Paul, Minnesota. In each district a Federal Intermediate Credit Bank exists to loan money to independent cooperative corporations, denominated Production Credit Associations, who, in turn, are owned by, and loan money to, farmers. The FICB in each district has general supervision over the PCA's in its district to ensure that the congressional policy of improving the well-being of farmers is achieved. This supervision extends to internal management of PCA's to the extent that the FICB can remove officers and directors and set salaries of local PCA officers. At all material times the PCA of Mankato, Minnesota, and the PCA of Worthington, Minnesota, were subject to that supervision and control by the St. Paul FICB.

From 1968 until 1984, James M. Corum was an attorney employed by the St. Paul FICB, ultimately serving for a time as its general counsel. By the nature of, and in the course of, his employment, with some regularity Corum came in contact with the various local PCA's in the district. Some of these contacts arose from seminars programmed and conducted by him for officers of local PCA's concerning, among other topics, potential legal issues likely to arise between the local PCA's and their member-borrowers relative to the administration of farm loans. Also, as part of his duties, Corum, working with other FICB officers, in fact, had, on occasion, taken adverse positions to local PCA's and their employees in termination, removal, or like supervisory proceedings. In 1984, Corum's employment with FICB was terminated. His termination was followed by litigation between himself and FICB in federal court. Following ultimate settlement of that litigation, Corum reentered the private practice of law.

In 1985 appellant PCA (Mankato) sued respondents Buckentin in Sibley County District Court in an attempt to foreclose a defaulted farm loan. Sometime after an answer and counterclaim had been interposed by one attorney, the law firm of Nicklaus and Fahey undertook the defense on behalf of the Buckentins. That firm interposed an amended answer and counterclaim in which new and additional "causes of action" were alleged.[2] Corum was associated with Nicklaus and Fahey

1. *Production Credit Association of Mankato v. Buckentin,* 396 N.W.2d 697 (Minn.App.1986).

2. The amended counterclaim in general alleged that (1) PCA Mankato had charged excessive interest in violation of 12 U.S.C.A. § 2096(b); (2) PCA Mankato had represented it possessed expertise upon which the debtors had relied but that through the negligence of the PCA the debtors sustained damages; (3) PCA breached an implied contract arising out of 10 years of lending custom and practice by the Mankato PCA; (4) the PCA had wrongfully denied an operating loan; and (5) the PCA had violated federal statutes and regulations enacted for the protection and benefit of farmer-debtors.

"of counsel." In fact, he was the attorney who had prepared the amended answer and counterclaim and thereafter took part in the representation of the Buckentins.

In April 1986 Nicklaus and Fahey (again with Corum "of counsel") commenced a lawsuit in Nobles County District Court on behalf of the Harberts against appellant PCA (Worthington). That complaint contained assertions of "causes of action" substantially similar to those alleged in the Buckentin counterclaim. In addition, FICB was named a party defendant.[3]

Following the appearance of Nicklaus and Fahey, with Corum "of counsel", in each lawsuit representing farmer-debtors, each PCA moved the appropriate trial court for an order to disqualify both Corum and the law firm from further representation of the farmer-debtors. Each motion asserted that when Corum had been attorney for FICB, he had "represented" the PCA's and that an attorney-client relationship had existed between him and the PCA's arising from legal advice given by him to the St. Paul FICB. Each motion also claimed the same relationship existed between Corum and the PCA and its officers concerning matters substantially related to issues in the pending lawsuit between the PCA's and the farmer-debtor. In resisting each motion, Corum denied the existence of any attorney-client relationship between himself and the PCA's; contended that his job was to see that the local PCA's were adequately represented by their own attorneys; and asserted that his relationship as senior attorney and general counsel *vis-a-vis* the local PCA's was adversarial in that his responsibility as attorney for FICB was to ensure that each PCA was in compliance with federal farm credit statutes and regulations. Each district court trial judge re-

jected Corum's contentions. Each directed entry of an order disqualifying Corum from representing the farmer-debtors in the pending claim. However, in each case the trial judge permitted the continued representation of the debtors by the law firm of Nicklaus and Fahey. In reversing the trial court in each case, the court of appeals concluded that Corum's representation of the debtor in the current litigation was not "substantially related" to his prior work as an attorney employed by the St. Paul FICB or to any attorney-client relationship between himself and either PCA.

While this court has never specifically enunciated the review standard to be employed by appellate courts in reviewing dispositions of motions seeking attorney disqualification, we assume that normally the "clearly erroneous" standard will be applied in reviewing strictly factual findings. In each of these cases the trial judge made a factual finding that an attorney-client relationship had previously existed between each PCA and Corum. Affidavits furnished to each court by Corum, PCA officials, officers of the St. Paul FICB and officials of other farm credit agencies presented each trial court with conflicting word descriptions of Corum's professional relationship with the PCA's while he was employed by the St. Paul FICB. Because we are unable to conclude that the resulting fact findings of the trial courts are clearly erroneous—even though had we in the first instance been the finder of fact we might have arrived at a different conclusion—they will not be disturbed.[4] But a factual determination that a prior attorney-client relationship had once existed is not dispositive of the issue posed by these cases.

---

**3.** At oral argument this court was informed that Corum, representing the plaintiffs, had offered to dismiss FICB. This offer was resisted, as we understood it, because the offer to dismiss was "without prejudice." In the *Buckentin* case, although the trial court granted a motion for leave to join FICB as a third-party defendant, apparently the joinder was never consummated.

**4.** In his argument Corum suggests the application of the analysis utilized in resolving attor-

ney-client evidentiary issues is appropriate— particularly with emphasis on the confidentiality prerequisite inherent in that analysis. The presence or absence of "confidentiality" is not dispositive on the issue of disqualification. *See, e.g., Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 172 (5th Cir.1979). *Accord, T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 268 (S.D.N.Y.1953).

Additionally, legal rules governing attorney representation have a bearing on the ultimate resolution. In 1985 this court promulgated the Minnesota Rules of Professional Conduct as part of its ultimate responsibility to set the standards for, and to regulate, professional conduct of lawyers admitted to practice in the state. Obviously, to ensure uniform application of the rules of lawyer conduct, by necessity, this court must retain the final independent interpretive authority to define the scope and application of those rules. *See e.g., In re Daly*, 291 Minn. 488, 490, 189 N.W.2d 176, 178–79 (1971). Though trial court interpretation of the rules are informative, and may be helpful, we do not give to them the same deference we are inclined to afford to factual findings. Thus, we turn to independently examine the relationship that had existed between Corum and the PCA's while he was employed by FICB.

The rule governing resolution of disqualification assertions based upon alleged conflicts of interest, Rule 1.9, Minnesota Rules of Professional Conduct (MRPC), provides: "A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation * * *." (Emphasis supplied).

Although each trial court found the existence of an attorney-client relationship between Corum and the PCA's, neither court found that Corum had represented either PCA in the same matter pending before that court. Indeed, it seems clear from the various affidavits submitted in connection with the removal motions that he had not. Thus, our attention must focus on whether the subject matter of the current litigation is "substantially related" to that prior representation. *See e.g., Jenson v. Touche Ross & Co.*, 335 N.W.2d 720 (Minn.1983); *National Texture Corp. v. Hymes*, 282 N.W.2d 890, 894 (Minn.1979). Understandably, whether the pending suit involves a "substantially related matter" is not always easily ascertainable. To aid in the task, courts have attempted to formulate tests to be employed in the analysis. Typical of one approach is that followed by the United States Seventh Circuit Court of Appeals. Under its approach, the court first factually reconstructs the scope of the prior representation. It then determines whether it can reasonably be inferred that confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it determines whether that information is relevant to the issues raised in the litigation pending against the former client. *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186 (7th Cir.1979). Courts in other jurisdictions have devised slightly different formulae to aid in resolution of the "substantially related matter" issue. *See e.g., In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981) ("The advice does not need to be 'relevant' in the evidentiary sense to be 'substantially related.' It need only be akin to the present action in a way reasonable persons would understand as important to the issues involved."); *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir.1983) *quoting Trone v. Smith*, 621 F.2d 994, 998 (9th Cir.1980) ("Substantiality is present if the factual contexts of the two representations are similar or related."); *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir.1985) (quoting *Trust Corp. of Montana* and *Trone*). While those various approaches to resolution of the disqualification issue are helpful, in our view none appear to materially improve upon the interpretive guidance furnished in the commentary following Rule 1.9, M.R.P.C. After noting that the scope of "matter" as used in the rule is often dependent upon the facts of a transaction or upon a question of the degree of the lawyer's involvement therein, that comment continues: " * * * a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client." The com-

ment also notes: " * * * the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client."

■ Our examination of the affidavits filed in these cases leads us to conclude that facts and circumstances of Corum's legal employment by the St. Paul FICB do not disqualify him from representing either of the respondent-debtors in these cases. The legal services he had rendered, while counsel for the St. Paul FICB, to these PCA's was not "substantially related" to the issues existing between the PCA's and the debtor-respondents in these two lawsuits. Seminars for PCA personnel arranged and programmed under the aegis of Corum while employed by the St. Paul FICB in a legal capacity involved topics arising from generally known information concerning administration of farm loans and the farm credit system. The record is void of any evidence to directly connect Corum's knowledge of the respondents' loans, let alone any legal advice rendered by him to either PCA with regard to any problems arising out of the administration of either loan. Termination of a lawyer's employment by a government agency, in and of itself without more, is insufficient to sustain a claim that the lawyer is subsequently disqualified from representing a citizen in a specific dispute with the agency. Disqualification is called for only if it has been established that he or she had provided to the agency, during the course of the employment, legal advice relative either to the pending dispute or to matters so closely related to subject matter of the present suit that it is readily apparent that it is substantially and essentially akin to the pending matter. Neither PCA has established that connection in either of these pending cases.

■ But has the St. Paul FICB established a connection of such magnitude as to disqualify Corum from representing the Harberts in their claim against it, or to

prevent him from representing the Buckentins should the third party proceedings in that suit be completed? We believe it has. The *Harberts* complaint contains allegations that the St. Paul FICB negligently failed to supervise the lending and loan servicing operations of the Worthington PCA. Those allegations also raised the issue that the St. Paul FICB formulated illegal interest rates that could be charged farmers by the PCA's charged on loans made to the Harberts.[5] In the *Harberts* case the trial court disqualified Corum from representing the Harberts in their claims against the FICB. Because the St. Paul FICB had not been formally named a party in the *Buckentin* case at the time of the hearing in the disqualification matter, nothing existed requiring a specific ruling by the trial court on FICB's claim that Corum likewise be disqualified for representing the Buckentins. The court's memorandum in the Buckentin's case, however, leaves us with no doubt that had St. Paul FICB been a party in that litigation the court would have disqualified Corum from litigating similar claims against the FICB.

Corum, while employed as senior attorney and, later, as general counsel for the St. Paul FICB, occupied a different role *vis-a-vis* the bank than he did in his relationship with either of the two PCA's. By his own admissions during the course of these proceedings, it clearly appears that his duties as attorney with the St. Paul FICB included supervision, on occasion, of some facets of loan administration by local PCA's, as well as rendering advice to other FICB officials relative to the supervision of lending practices and procedures utilized by local PCA's. Likewise his duties included the obligation to give legal advice to bank officials pertaining to formulation of legal interest rates chargeable to borrowers on loans from local PCA's. Even though Corum had not represented the St. Paul FICB in either the Harberts or Buckentin loan transactions, he had regularly, as part of his duties, represented the bank in matters substantially related to issues in

---

**5.** Apparently the pending joinder of the St. Paul FICB as a third-party defendant would result in the existence of similar allegations in the *Buck-* *entin* case. However, that matter is presently in abeyance.

each of these pending cases—to wit, supervision of PCA loan administration and formulation of interest rates on PCA loans. Therefore, applying the tests set forth in *National Texture Corp. v. Hymes, supra, Jenson v. Touche Ross & Co., supra,* as now codified in Rule 1.9 of M.R.P.C., we conclude that so long as the Harberts complaint asserts those claims against the St. Paul FICB, Corum should be disqualified from representing them.[6]

We hold Corum is not disqualified from representing either the Harberts or the Buckentins in their litigation with their local PCA. Accordingly, we affirm the court of appeals on that issue. We further hold that Corum is disqualified from representing the Harberts in their claim against the St. Paul FICB.[7] Therefore, we reverse on that issue and remand to each trial court for further proceedings not inconsistent with this opinion.

---

6. Though not before this court, should the Buckentins complete the joinder of FICB as a third-party defendant, Corum would likewise be disqualified from handling those third-party claims if they are similar to the allegations against FICB in the Harberts complaint.

7. We need not address the claims that Nicklaus and Fahey likewise be disqualified. At oral argument we were advised that issue is moot since the firm no longer represents either debtor-respondent, and, in fact, is no longer in existence.