**OXFORD DEVELOPMENT MINNESOTA, INC., et al., Respondents,**

v.

**COUNTY OF RAMSEY in the State of Minnesota, et al., Appellants.**

No. C3–88–608.

Court of Appeals of Minnesota.

Aug. 16, 1988.

John A. Murray, St. Paul, Robert J. Sheran, Minneapolis, for respondents.

Tom Foley, Ramsey County Atty., David F. MacMillan, Asst. County Atty., St. Paul, for appellants.

Heard, considered and decided by LANSING, P.J., and LOMMEN and SCHULTZ, JJ.*

## OPINION

A. PAUL LOMMEN, Acting Judge.

Respondent Oxford Development Minnesota, Inc. (Oxford) commenced real estate property tax litigation pursuant to Minn. Stat. § 278 regarding its Town Square retail and office premises in St. Paul. Oxford, now BCED Minnesota Inc., filed tax petitions for tax years 1982–83 through 1986–87. Each tax petition was transferred to Minnesota Tax Court pursuant to an order of the Ramsey County District Court. Oxford sought to enjoin appellant Ralph Peterson, a former attorney for Donaldsons, a tenant of Town Square, from participating in the litigation and from communicating certain information with the Ramsey County Attorney's Office. Following a remand from the Court of Appeals for specific findings, the court again issued a temporary injunction. Appellants Ralph Peterson, Tom Foley and Ramsey County appeal.

## FACTS

Ralph W. Peterson was a partner of the Minneapolis law firm of Eastlund, Peterson & Solstad, Ltd. between 1969 and December 31, 1986. This firm has been outside legal counsel to Donaldsons, Inc. for ap-

---

* Acting as judge of the court of appeals by ap- pointment pursuant to Minn. Const. art. 6, § 2.

proximately 20 years, representing it in general legal matters and in property tax litigation. Peterson handled Donaldsons' real estate tax matters.

Donaldsons is a tenant of the Town Square complex in St. Paul. Donaldsons' lease with Oxford requires it to pay a pro rata share of the property taxes levied on the property. In March 1983, Peterson recommended to Donaldsons that it file Chapter 278 real estate tax petitions for its leased store in Town Square. These petitions were later withdrawn by Peterson on Donaldsons' behalf. Peterson claims the petitions were dismissed because Donaldsons was unable to obtain separate parceling for the Town Square store. The petitions were dismissed after Peterson discovered Oxford filed a similar petition.

After the withdrawal of the petitions, Donaldsons directed Peterson to become familiar with the Town Square tax litigation to ensure that Donaldsons interests were properly represented in that matter. In December 1984, Peterson met with Donaldsons executives, trial counsel and executives for Oxford. An affidavit from Oxford's attorney indicates that facts, strategies, and the merits of the tax litigation were discussed. Peterson's affidavit states that no confidential information was obtained at this meeting.

In April 1987, Peterson was offered a job with the Ramsey County Attorney's Office, with the expectation he would be significantly involved with the Town Square tax litigation. In a letter dated April 30, 1987 to Andrew Giordano, a Vice President for Donaldsons, Peterson informed Giordano that he would be joining the staff of the County Attorney, and that he reviewed the conflict issue with independent counsel. He told Giordano in his letter that representation of Ramsey County in the tax litigation did not present any potential conflict of interest problem under the Minnesota Rules of Professional Conduct. Giordano signed a "consent" at the request of Peterson at the bottom of the letter. However, Giordano had already submitted his resignation at the time the consent was given and was moving to Seattle, Washington.

After learning of Peterson's new position, Donaldsons informed Ramsey County and Peterson that they did not consent to his involvement on behalf of Ramsey County in the Town Square tax litigation. Based on Peterson's representation of Donaldsons and involvement in the Town Square litigation, Oxford requested a permanent injunction, enjoining Peterson from participating in any manner in the Town Square property tax litigation or in any other related roles which are or may be adverse to the interests of Oxford, Donaldsons, or to other parties in interest. Oxford also sought to prevent Peterson from communicating confidences or secrets of Donaldsons or Oxford or other tenants in Town Square to the Ramsey County Attorney's Office.

Following a remand for findings by the Court of Appeals in *Oxford Development v. Ramsey County,* 417 N.W.2d 319 (Minn. Ct.App.1988), the trial court granted a temporary injunction, accompanied by 10 pages of findings of fact and conclusions of law. Among other things, the trial court found:

3. Mr. Peterson's earlier representation of Donaldsons, Oxford and other lessees of Town Square was in the same or substantially related matters as his present representation of Ramsey County, and the interests of Donaldsons, Oxford and the other Town Square lessees are materially adverse to those of Ramsey County.

4. Neither Donaldsons, Oxford nor any other lessee of Town Square have consented to Mr. Peterson's representation of Ramsey County in property tax litigation materially adverse to Donaldsons, Oxford or any other lessee of Town Square.

\* \* \* \* \* \*

7. The harm that would be suffered by [Oxford] if the temporary injunction is denied would be substantial, and would result in the disclosure and adverse use of the confidences, secrets or other information of Donaldsons, Oxford and other lessees of Town Square that Mr. Peter-

son received as their counsel during the course of his earlier representation.

The court also found that the Minnesota Tax Court did not afford an adequate remedy and the injunctive relief sought in district court was appropriate. Ralph Peterson, Tom Foley, and Ramsey County appeal the temporary injunction.

### ISSUES

1. Does respondent have an adequate remedy at law so as to preclude injunctive relief?

2. Did the trial court abuse its discretion in granting a temporary injunction?

### ANALYSIS

#### I. Adequate Remedy at Law

■ Since an injunction is an equitable remedy, the party seeking an injunction must clearly establish that his legal remedy is inadequate. *Borom v. City of St. Paul*, 289 Minn. 371, 376, 184 N.W.2d 595, 598 (1971). If Oxford has an adequate remedy at law, the granting of a temporary injunction was an abuse of discretion by the trial court. *See A.M.F. Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961).

■ Appellants argue that Oxford was not entitled to an injunction because they had an adequate remedy at law: a disqualification order from the tax court. Oxford responds that disqualification will not preclude Mr. Peterson's participation in other adverse roles, other than representation of the county in tax court.

The trial court found that Oxford had no adequate remedy before the Minnesota Tax Court because:

(a) Neither Tom Foley nor Ralph Peterson is a party to the Tax Court proceedings;

(b) The Tax Court has no power to issue an injunction restraining violations of Rule 1.9 or other rules of the Rules of Professional Conduct;

(c) A Tax Court order precluding Ralph Peterson from appearing in the Tax Court proceedings would not prevent him from using information relating to his former representation of Oxford, Donaldsons and/or other tenants in the Town Square premises who are parties in interest to this litigation to their disadvantage.

The trial court's finding (c) refers to respondent's concerns that Peterson, under a tax court order, would only be prohibited from representing Ramsey County in tax court. Oxford has a remedy at tax court, but a disqualification order would not necessarily preclude Peterson's other representation of Ramsey County in the Town Square tax litigation. Because of the inadequacy of the tax court remedy, the trial court did not abuse its discretion in determining that Oxford had an inadequate remedy at law.

#### II. Merits of the Injunction

##### A. *Standard of Review*

■ Minn.R.Civ.P. 65.02 authorizes the grant of a temporary injunction "if by affidavit, deposition testimony, or oral testimony in court, it appears that sufficient grounds exist therefor." A district court's ruling on a motion for temporary injunction will not be disturbed unless the court abused its discretion. *Eakman v. Brutger*, 285 N.W.2d 95, 97 (Minn.1979).

■ To decide whether the court abused its discretion, evaluation of five factors is necessary:

(1) the nature of the relationship between the parties;

(2) the harm the plaintiff would suffer if the temporary relief is denied, as weighed against that inflicted on the defendant if the injunction is granted;

(3) the likelihood that one party or the other will prevail on the merits;

(4) facts permitting or requiring consideration of public policy expressed in statutes;

(5) the administrative burden involved in judicial supervision and enforcement of the temporary decree.

*Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965).

## B. *Five Dahlberg Factors*

### 1. Nature and Background of the Parties

■ Peterson formally acted as tax counsel to Donaldsons, and allegedly acted in a consulting capacity to Oxford. He now represents Ramsey County in the same tax litigation against Oxford. Donaldsons leases its Town Square property from Oxford and pays a pro rata share of property taxes. The injunction thus relates to pending tax litigation in which all parties are involved.

### 2. Harm to the Parties

A court must weigh the harm to be suffered by the moving party if a preliminary injunction is denied as compared to that inflicted on the non-moving party if the injunction issues pending trial. *Yager v. Thompson*, 352 N.W.2d 71, 74–75 (Minn.Ct. App.1984). The trial court made the following findings relative to the harm to Oxford:

4. The outcome of that Town Square real estate property tax litigation will have a significant impact upon the taxes paid by and/or refunded to Donaldson's, other tenants and Oxford for the years in question, as well as for future years.

\* \* \* \* \* \*

11. Donaldson's directed Mr. Peterson to become familiar with and knowledgeable regarding the Town Square tax litigation in order to be assured that Donaldson's interests were properly represented and addressed relative to its Town Square premises and that litigation in which it is a party in interest.

\* \* \* \* \* \*

20. Donaldson's, Oxford and other lessees are now in the position of having their confidences, strategies and other disclosures revealed and made available to Ramsey County of its use in this and other matters on a continuing basis.

Based on these findings, the trial court concluded:

7. The harm to be suffered by [Oxford] if the temporary injunction is denied would be substantial, and would result in the disclosure and adverse use of confidences, secrets, or other information of Donaldson's, Oxford and other lessees of Town Square that Mr. Peterson received as their counsel being the counsel of his earlier representation.

8. The harm suffered by the [County] if the temporary injunction is granted would be minor in comparison. The Ramsey County Attorney's Office has many other attorneys in its office who have sufficient ability and background to represent the county in this matter.

These findings are supported by respondent's affidavits and are not clearly erroneous.

Appellants also argue that in this balance, the harm suffered by Ramsey County is greater because the injunction prohibits Peterson from participating in the Town Square tax matters or in *other (unspecified) matters* where the interests are materially adverse to the interests of Oxford, Donaldsons or *other parties in interest or for other tenants* of Town Square.

It is true that injunctions unreasonably restricting attorneys from practicing law or unreasonably restricting a client's right to obtain counsel are overbroad. *See, e.g., Production Credit Association of Mankato v. Buckentin*, 396 N.W.2d 697, 700 (Minn.Ct.App.1986), *aff'd in relevant part*, 410 N.W.2d 826 (1987) ("to disqualify [the attorney] here would significantly serve to deprive [him] of his right to earn a living"). The record does not indicate that Peterson is unable to represent Ramsey County in other matters not involving these parties, however. The balance of harms findings by the trial court are affirmed, as they are not clearly erroneous.

### 3. Likelihood of Success on the Merits

Rule 1.9 of the Minnesota Rules of Professional Conduct states:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the *same or a substantially related matter* in which that person's interests are materially adverse to the interests of the for-

mer client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Minn.R.Prof.Conduct 1.9 (emphasis added). This rule is the standard by which Peterson's conduct is measured in determining whether the temporary injunction, and eventually, the permanent injunction should issue.

The initial question is whether Donaldsons or Oxford consented to the representation, thus "waiving" any conflict of interest problem. Although appellants do not seriously argue on appeal that the consent was effective, we note that the trial court found that Donaldsons and Oxford did not effectively consent after consultation to Mr. Peterson's representation of Ramsey County in the Town Square real estate tax litigation.

Once consent is negated, we determine on appeal whether respondents showed a substantial likelihood that they will prevail on the merits in the underlying litigation. *See Dahlberg*, 272 Minn. at 275, 137 N.W. 2d at 321. A showing that Peterson formerly represented Donaldsons and Oxford in the *same or a substantially related matter* is required. *See* Minnesota Rules of Professional Conduct, Rule 1.9; *Buckentin*, 410 N.W.2d at 823.

a. Representation of Donaldsons

Appellants do not dispute that Peterson formerly represented Donaldsons in property tax matters. The issue is whether Peterson's prior representation was in the "same or substantially related matter." Peterson prepared a tax petition for Donaldsons covering Town Square. Later, Peterson recommended that Donaldsons dismiss that petition because he believed Donaldsons would not be successful in having its store area separately parcelled and/or because he learned that Oxford filed an appeal for the entire complex. After this withdrawal, Peterson was contacted by an appraisal consultant employed by Donaldsons who expressed his concern over Oxford's proposed evaluation methods. Peterson attended a meeting among Oxford, Oxford's counsel, Donaldsons' executives and the appraisal consultant to Oxford's counsel. At this meeting, respondent's affidavits indicate that confidential information was discussed. Peterson denies this.

Mark Solstad, a shareholder in Peterson's former law firm, submitted an affidavit in which he stated that Peterson had extensive access to Donaldsons' confidential information concerning property tax matters. Records of the law firm disclosed that Peterson kept time records charged to the Town Square tax file. Appellants attempt to dispute these affidavits because they are from the attorneys who currently represent Donaldsons and Oxford. Further, appellants state that the information which Peterson possessed about the operations of Donaldsons was "extremely limited" and not the type of information the rule contemplates to protect. It is undisputed that Peterson represented Donaldsons in tax court petitions for Donaldsons stores in Highland Park, Rosedale, and other shopping centers in other counties.

Peterson represented Donaldsons in the same or substantially related matter such that representation of Ramsey County would be a conflict of interest under Rule 1.9. The comment to Rule 1.9 states:

The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

Minn.R.Prof.Conduct 1.9 comment (1985).

Peterson represented Donaldsons in connection with the real estate property tax issues relating to Town Square. Although the petition on behalf of Donaldsons was withdrawn, he continued to represent them in the matter by keeping abreast of the developments of the Oxford's petition. Donaldsons is required to pay taxes based on a pro rata share of the total. Peterson's representation would reasonably be considered a "changing of sides" under the rule.

### b. Peterson's relationship with Oxford

Respondent alleged at district court and argues on appeal that Peterson acted as consulting counsel to Oxford in the Town Square property tax litigation. Appellants contend that there was never an attorney-client relationship between Peterson and Oxford.

Primarily, the December 22, 1984 meeting between Oxford representatives and counsel and Donaldsons' representatives and counsel constitutes the basis for the consulting counsel relationship. There is a dispute between affidavits as to what took place at the meeting. Two affidavits from respondent indicate that confidential information was given to Peterson. Three affidavits were offered by appellants, indicating that no confidential information passed between Oxford and Peterson.

The trial court found:

At that meeting, Oxford revealed confidences, secrets, trial strategies and other information relating to the merits of the case and allowed Mr. Peterson to discuss those matters with Oxford executives, attorneys, consulting experts and potential witnesses, all for purposes of potentially having Mr. Peterson become involved as a consulting counsel in the litigation. Oxford understood that Mr. Peterson and his firm were continuing as a consulting counsel to Donaldsons regarding this litigation and as consulting counsel to Oxford when appropriate and acted in this litigation on that basis thereafter. Following that conference, Donaldsons was kept advised by Oxford regarding the status and merits of this Town Square litigation through regular conversations, the contents of which Mr. Peterson had access to and contributed to through Donaldsons executives.

These findings are consistent with the allegations made by respondent in affidavits and are not clearly erroneous. *See* Minn.R. Civ.P. 52.01.

### 4. Public Policy

As to public policy, the trial court made the following finding:

12. The public policy standards preserved by a temporary injunction include, among others, protecting the attorney/client relationship and the confidences and communications made therein; protecting the citizens' opportunity to petition their government for redress of grievances; maintaining the public's confidence in the judicial system and upholding the ethical rules that govern attorneys in their relationships with clients and the Court.

This finding is not clearly erroneous.

### 5. Administrative Burdens

Appellant argues that the temporary injunction is inappropriate because the "trial court obviously will not be in a position to supervise the daily communications which occur between the attorneys of the Ramsey County Attorney's office." The administrative burdens question was addressed by the trial court:

The administrative burdens for the Court in enforcing a temporary injunction in this case are not significant. [Appellants], as public officials and officers of the Court, are obligated to abide by the Rules of Professional Conduct.

Respondent is satisfied with the professional assurance of appellants as to compliance with the injunction. There are no significant administrative burdens associated with the injunction issued.

### DECISION

The trial court did not err in concluding that Peterson's representation of Ramsey County in the Town Square tax litigation is materially adverse to that of his former client, Donaldsons, to constitute a conflict of interest.

AFFIRMED.