Elizabeth NIEMI, Respondent,

v.

GIRL SCOUTS OF MINNESOTA AND
WISCONSIN LAKES AND
PINES, Appellant.

No. A08–1791.

Court of Appeals of Minnesota.

July 14, 2009.

Steven Andrew Smith, Adrianna S. Haugen, Nichols Kaster, PLLP, Minneapolis, MN, for respondent.

James A. Wade, Jessica L. Durbin, Johnson, Killen & Seiler, P.A., Duluth, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; CONNOLLY, Judge; and JOHNSON, Judge.

## OPINION

JOHNSON, Judge.

Joseph J. Roby, Jr., is an attorney in private practice in the city of Duluth. Between 1979 and 1983, he represented Elizabeth Niemi in an employment-discrimination lawsuit she brought against her employer. In 2008, Roby was retained by the Girl Scouts of Minnesota and Wisconsin Lakes and Pines (hereinafter the Girl Scouts) to defend the organization against an employment-discrimination lawsuit brought by Niemi. The district court granted Niemi's motion to disqualify Roby and his law firm from representing the Girl Scouts in this lawsuit. We conclude that disqualification is not required by the rules of professional conduct and, therefore, reverse.

## FACTS

In 1980, Niemi was employed as a deputy director in one of the departments of the city of Duluth. While employed there, she commenced a lawsuit against her employer in federal district court, alleging violations of the federal Equal Pay Act and 42 U.S.C. § 1983. Niemi alleged, among other things, that she was paid less than male employees whom she supervised whose jobs required less skill, effort, and responsibility. She also alleged that, after the city learned of her intent to file suit, her duties were reduced and she was excluded from meetings and projects.

Niemi first sought counsel in 1979 by retaining Conrad M. Fredin, then a partner of the Duluth law firm of Johnson, Fredin, Killen, Thibodeau & Seiler, P.A. (now known as Johnson, Killen & Seiler, P.A.). Fredin was the lead attorney on the case, but Roby, then a new associate at the firm, also represented Niemi. Roby's work on Niemi's behalf ended in 1983, when the case reached its conclusion.

Later, beginning in 1988, Niemi served as the executive director and chief executive officer (CEO) of the Northern Pine Council of the Girl Scouts. In 2006 and 2007, the Northern Pine Council merged with the Land of Lakes Council. In December 2007, the newly merged organization selected the CEO of the Land of Lakes Council to become CEO of the new organization. In May 2008, Niemi commenced this lawsuit, alleging claims of age discrimination and reprisal in violation of the Minnesota Human Rights Act, Minn. Stat. §§ 363A.08, 363A.15 (2008).

In late May 2008, Roby signed and served an answer on behalf of the Girl Scouts. In July 2008, Niemi moved to disqualify Roby and the Johnson Killen law firm because Roby had represented her in her prior lawsuit against the city of Duluth. In her motion papers, Niemi asserted that, during the prior lawsuit, Roby frequently communicated with her, both at his law firm's offices and by telephone. Niemi submitted an affidavit in support of her motion, stating, "Mr. Roby and I spent countless hours working on my case and I disclosed to him and the firm confidential information including my job experience,

qualifications, supervisory skills, relationship with peers and staff, and approach to litigation." In response, Roby stated that he remembers little about the case except the fact that he worked on it.

In October 2008, the district court granted Niemi's motion. In its order, the district court reasoned that the issues in the two lawsuits are "not identical" but that both are employment-discrimination cases with a "substantial, relevant relationship." The district court recognized that "25 years is a considerable amount of time" but also noted Niemi's assertion that Roby worked extensively on her prior lawsuit and received confidential information from her. The district court reasoned that the issues in this lawsuit "are substantially related to the former issues in such a way that reasonable persons would conclude Mr. Roby's previous representation of Plaintiff is akin to the present action in a way that is important to the issues resolved." The district court concluded that Roby should be disqualified pursuant to rule 1.9 of the Minnesota Rules of Professional Conduct and that the Johnson Killen firm should be disqualified pursuant to rule 1.10(a). The Girl Scouts appeal.

## ISSUE

Must Roby and the Johnson Killen law firm be disqualified from representing the Girl Scouts because Roby represented Niemi in a different lawsuit more than 25 years earlier?

## ANALYSIS

■ The Girl Scouts argue that the district court erred by disqualifying Roby and the Johnson Killen law firm pursuant to rules 1.9(a) and 1.10(b) of the Minnesota Rules of Professional Conduct. This court applies a clearly erroneous standard of review to factual findings underlying an attorney disqualification, *Production Credit Ass'n v. Buckentin*, 410 N.W.2d 820, 822 (Minn.1987), and we apply a *de novo* standard of review to the district court's interpretations of rules of court, which present questions of law, *Lennartson v. Anoka–Hennepin Indep. Sch. Dist. 11*, 662 N.W.2d 125, 129 (Minn.2003). Inasmuch as the relevant underlying facts are largely undisputed, we consider the parties' arguments without deference to the district court's ruling.

### A.

The rule that is the legal basis of Niemi's motion to disqualify provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Minn. R. Prof. Conduct 1.9(a). The Girl Scouts obviously have interests that are "materially adverse" to Niemi in this lawsuit. Consequently, the disqualification motion turns on whether the prior lawsuit and the present lawsuit are "substantially related matter[s]."

■ When interpreting the "substantially related" requirement of rule 1.9(a), it is appropriate to refer to comments to the rule. *Buckentin*, 410 N.W.2d at 823. Those comments reflect two alternative means of satisfying the "substantially related" requirement:

Matters are "substantially related" for purposes of this rule [1] if they involve the same transaction or legal dispute or [2] if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.

Minn. R. Prof. Conduct 1.9 cmt. 3. In light of rule 1.9(a) and its comments, dis-

qualification is necessary if an attorney previously provided legal services to a former client "relative either [1] to the pending dispute or [2] to matters so closely related to subject matter of the present suit that it is readily apparent that it is substantially and essentially akin to the pending matter." *Buckentin*, 410 N.W.2d at 824.

Niemi urges us to analyze her motion in the same manner as did the district court, that is, by applying the three-part test of *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720 (Minn.1983). The *Jenson* opinion interpreted canons 4, 7, and 9 of the Minnesota Code of Professional Responsibility. *Id.* at 731. The entire code was repealed in 1985 when the supreme court adopted the Minnesota Rules of Professional Conduct. *Lennartson*, 662 N.W.2d at 129. Since 1985, *Jenson* has informed the analysis of the rules in limited ways. *See, e.g., Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865, 868–69 (Minn.1989); *Buckentin*, 410 N.W.2d at 823, 825. But the supreme court made clear six years ago that *Jenson* retains vitality only to the extent that it is not inconsistent with the rules of professional conduct. In *Lennartson*, the supreme court noted that *Jenson* is inconsistent with rule 1.10(b), which determines when an entire law firm is disqualified due to an individual attorney's disqualification under rule 1.9(b). 662 N.W.2d at 133. The supreme court stated that the differences between *Jenson* and rule 1.10(b) are "significant" and "difficult to reconcile." *Id.* The supreme court reasoned that "the *Jenson* test cannot readily act as a supplement to [rule 1.10(b)] because the differences in the two approaches can lead to different results." *Id.* The supreme court then concluded that "insofar as the test we articulated in *Jenson* is inconsistent with [rule 1.10(b)], it has been superceded by the rule." *Id.* at 135.

The interpretation of rule 1.9(a) was not at issue in *Lennartson.* *Id.* at 126–27. But the reasons expressed by the supreme court in *Lennartson* for placing primary emphasis on rule 1.10(b) and only secondary emphasis on *Jenson* are equally applicable to rule 1.9(a). The *Jenson* test touches on the subjects of both rule 1.9 and rule 1.10. As a general principle, if a rule has been repealed and replaced with a different rule, caselaw interpreting the repealed rule no longer applies. *See Szarzynski v. Szarzynski*, 732 N.W.2d 285, 295 (Minn.App.2007) (reasoning that caselaw predating adoption of rule of general practice was superseded by rule); *cf. Powell v. Anderson*, 660 N.W.2d 107, 119 (Minn. 2003) (noting that caselaw interpreting rule of civil procedure was superseded by subsequent enactment of statute on same subject). Thus, we interpret *Lennartson* to have held by implication that rule 1.9(a) applies to a motion to disqualify an individual attorney under rule 1.9(a) without regard for any aspect of *Jenson* that is inconsistent with rule 1.9(a).

As a practical matter, there are inconsistencies between rule 1.9(a) and *Jenson* that could lead to varying outcomes in this case. The first part of the *Jenson* test asks whether there is "a substantial, relevant relationship or overlap between the subject matters of the two representations." *Jenson*, 335 N.W.2d at 731. But rule 1.9(a) requires an inquiry into whether there is "a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Minn. R. Prof. Conduct 1.9 cmt. 3. The two inquiries are qualitatively different. The *Jenson* test focuses on similarities in the legal and factual issues of the two cases; a rule 1.9(a) analysis focuses on information that was acquired by the attorney in the course of the prior

lawsuit. *See ABA/BNA Lawyers' Manual on Prof'l Conduct* 51:222–24 (2002). The second part of the *Jenson* test can be harmonized with rule 1.9(a), as demonstrated below. But the third part of the *Jenson* test instructs courts to "weigh[ ] the competing equities." *Jenson,* 335 N.W.2d at 732. The supreme court noted that the third part of *Jenson* is inconsistent with rule 1.10(b) because the rule "does not give the court discretion to weigh any of the other equity considerations from *Jenson.*" *Lennartson,* 662 N.W.2d at 133. Likewise, rule 1.9(a) does not call for a weighing of equitable considerations. Thus, rule 1.9(a) supersedes *Jenson* insofar as *Jenson* is inconsistent with the rule. *See id.* at 135.

### B.

Niemi argues that disqualification is necessary because of two types of information that she communicated to Roby in the course of their attorney-client relationship during the prior lawsuit. First, she asserts that she shared information "regarding her performance, supervisory style, employment history, experience, strengths and weaknesses, and job qualifications." Second, she asserts that she shared information "regarding the manner in which [she] handles and responds to employment litigation." These arguments are based on a short affidavit in which Niemi stated, "Mr. Roby and I spent countless hours working on my case and I disclosed to him and the firm confidential information including my job experience, qualifications, supervisory skills, relationship with peers and staff, and approach to litigation."

### 1.

■ The second type of information identified by Niemi, her "approach to litigation," presents the weaker of the two arguments. As an initial matter, it is debatable whether this type of information can be described as "confidential factual information." Minn. R. Prof. Conduct 1.9 cmt. 3. It is not necessarily "factual" in nature because it appears to consist primarily of Niemi's personal characteristics and behavioral tendencies or, more accurately, Roby's impressions of Niemi's personal characteristics and behavioral tendencies. *See State ex rel. Ogden Newspapers, Inc. v. Wilkes,* 211 W.Va. 423, 566 S.E.2d 560, 567 (2002) (stating that attorney's "[v]ague general impressions" about corporate client's "philosophical outlook" did not warrant attorney's disqualification in subsequent lawsuit against corporation); Restatement (Third) of the Law Governing Lawyers § 132 cmt. d(iii) (2000) (stating that attorney's knowledge of manner in which client approaches litigation is not "independently relevant" for purposes of substantial relation test, unless information is "directly in issue or of unusual value in the subsequent matter"). In addition, the information is not necessarily "confidential" because it may refer to information that is available to persons who are not part of the attorney-client relationship, such as opposing counsel, a court reporter transcribing a deposition, or court personnel, and perhaps even persons who know Niemi through social interactions. *See* Minn. R. Prof. Conduct 1.9 cmt. 3 ("Information that has been disclosed *to the public or to other parties* adverse to the former client ordinarily will not be disqualifying."); *see also* Restatement (Third) of the Law Governing Lawyers § 132(2) (2000) (stating that rules do not restrict attorney's use of information that has become "generally known").

Furthermore, this type of information exists in practically every lawsuit. To allow it to satisfy the requirement of "confidential factual information" in this case would effectively prevent an attorney from taking a position adverse to a former client for the remainder of the attorney's career.

The drafters of the rules could have imposed a lifetime ban on being adverse to a former client, but the drafters obviously declined to do so. *See Vestron, Inc. v. National Geographic Soc'y,* 750 F.Supp. 586, 595 (S.D.N.Y.1990) ("if insight into a former client's general 'litigation thinking' were to constitute 'relevant privileged information,' then disqualification would be mandated in virtually every instance of successive representation"). Niemi's theory has been discredited by at least one commentator, who noted that protecting this type of information would lead to "both · over-application of the substantial relationship test and a large increase in the number of motions to disqualify." Charles W. Wolfram, *Former-Client Conflicts,* 10 Geo. J. Legal Ethics 677, 723 (1997).

Thus, information consisting of Niemi's "approach to litigation" does not justify a conclusion that the prior lawsuit and the present lawsuit are "substantially related matters." We reach this conclusion without considering whether this type of information retains any relevance or usefulness 25 to 30 years after it is acquired.

### 2.

The first type of information identified by Niemi, information she communicated to Roby concerning her own professional skills and employment history, presents a somewhat stronger argument. When analyzing a motion to disqualify under rule 1.9(a), a court "first factually reconstructs the scope of the prior representation." *Buckentin,* 410 N.W.2d at 823. The court "then determines whether it can reasonably be inferred that confidential information allegedly given would have been given to a lawyer representing a client in those matters." *Id.* "Finally, it determines whether that information is relevant to the issues raised in the litigation pending against the former client." *Id.* (citing *Novo Terapeutisk Laboratorium A/S v.*

*Baxter Travenol Labs., Inc.,* 607 F.2d 186 (7th Cir.1979)); *see also ABA/BNA Lawyers' Manual on Prof'l Conduct* 51:224 (stating that rule 1.9(a) comments are "traceable largely to" *Novo Terapeutisk* and other Seventh Circuit cases); *Jenson,* 335 N.W.2d at 732 (imposing irrebuttable presumption that attorney received confidences from former client if there is substantial, relevant relationship or overlap between subject matters).

Consistent with the first and second steps of the *Buckentin* analysis, Niemi is not required to produce evidence that confidential factual information actually was communicated because it is reasonable to infer that she made the communications that she says she made. We can presume that Niemi informed Roby of events that occurred during her employment with the city of Duluth or conveyed to him her self-assessment of her professional strengths and weaknesses. Such information would be confidential if Roby acquired it because of his attorney-client relationship with Niemi. We do not consider information that would be known by persons outside the attorney-client relationship, such as persons who worked with her at either the city of Duluth or the Girl Scouts or at another workplace. *See* Minn. R. Prof. Conduct 1.9 cmt. 3; *see also* Restatement (Third) of the Law Governing Lawyers § 132(2). As required by *Buckentin,* we assume that the communications described by Niemi occurred.

That leads to the third step of the *Buckentin* analysis, which asks whether the confidential factual information identified by Niemi "is relevant to the issues raised in the litigation pending against the former client." *Buckentin,* 410 N.W.2d at 823. The Girl Scouts argue that the information Roby presumably acquired in the first lawsuit would not "materially advance" the Girl Scouts' position in this lawsuit "be-

cause the information relates to facts, personal relationships, and personal characteristics in a different work environment, for a different employer, with different co-workers and supervisors, in a different sector of the economy (public employment vs. private, non-profit employment) which occurred more than a quarter century ago." It is not difficult to imagine, however, that confidential factual information obtained from a plaintiff in one employment-discrimination lawsuit may be relevant to the issues raised in a second employment-discrimination lawsuit brought by the same person, if the second lawsuit is brought soon after the first. But the key to this case is that Niemi's two lawsuits are separated by a quarter of a century. She commenced the first lawsuit early in her career, and she commenced the present lawsuit at a much later stage of her career and a later stage of her life. The Girl Scouts emphasize this fact as well, arguing that Niemi's "supervisory skills, as well as her job experiences, qualifications, [and] relationship with peers and staff surely have evolved beyond recognition compared to what they were in 1979."

The Girl Scouts' argument finds support in comments to the rule: "Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related." Minn. R. Prof. Conduct 1.9 cmt. 3. The Girl Scouts' argument also finds support among the secondary authorities:

> [C]ourts should recognize that there comes a time when what a lawyer learned is no longer factually important in the latter representation. [E]ven if facts are remembered with acute and abundant detail . . ., the passage of time often will decrease or destroy the relevance of those facts in the latter representation. Intervening happenings and other facts will slowly erode whatever

salience might originally have attached even to the former client's inner-most secrets.

Wolfram, *supra*, at 732.

The Girl Scouts' argument finds further support in analogous cases from other jurisdictions. In *Wilkes*, a trial court disqualified two attorneys for the plaintiff in an employment-discrimination action because they had represented the defendant in a different employment-discrimination case nine years earlier. On appeal, the disqualification was reversed, in part because the passage of time meant that information gleaned from the prior representation had only limited relevance. 566 S.E.2d at 565–66. Similarly, in *Schwartz v. Cortelloni*, 177 Ill.2d 166, 226 Ill.Dec. 416, 685 N.E.2d 871 (1997), the court held that disqualification was not appropriate in a land-partition action on the ground that the plaintiff's attorney had represented the landowner 40 years earlier in a guardianship proceeding. The court reasoned, in part, that there was a "considerable passage of time" between the two lawsuits and that information obtained by the attorney in the prior lawsuit had since been made public. *Id.* at 879.

 Ultimately, Niemi's disqualification motion turns on the fact that 25 years passed between the conclusion of Roby's representation of Niemi in the prior lawsuit and the beginning of his representation of the Girl Scouts in the present lawsuit. The facts that were relevant to Niemi's first lawsuit likely are irrelevant to the present lawsuit or have only limited, peripheral relevance because those facts are obsolete. The lack of relevance means that there is not "a substantial risk that confidential factual information" that presumably was communicated from Niemi to Roby in the late 1970s and early 1980s during the first lawsuit "would materially advance [the Girl Scouts'] position in" the

present lawsuit. Minn. R. Prof. Conduct 1.9 cmt. 3. Consequently, the prior lawsuit is not "so closely related to subject matter of present suit that it is readily apparent that it is substantially and essentially akin to the pending matter." *Buckentin,* 410 N.W.2d at 824. Thus, the present lawsuit is not a "substantially related matter" for purposes of rule 1.9(a). Because Roby is not disqualified by rule 1.9(a), the Johnson Killen law firm is not disqualified by imputation by rule 1.10(a).

We note that both parties have presented arguments concerning similarities in the subject matters of the two lawsuits. Niemi argues that both lawsuits involve claims of unlawful employment discrimination and reprisal and defenses relating to her qualifications and job performance. The Girl Scouts argue that although the two lawsuits are of the same general type, they are "factually distinct." *See* Minn. R. Prof. Conduct 1.9 cmt. 2. These arguments go directly to the first step of the *Jenson* test, which asked whether there is "a substantial, relevant relationship or overlap between the subject matters of the two representations." 335 N.W.2d at 731. That analysis would tend to cause the similarities between the two cases to weigh in favor of disqualification, especially because the *Jenson* analysis does not appear to consider the passage of time. But as discussed above, the supreme court has held that "insofar as the test we articulated in *Jenson* is inconsistent with [rule 1.10(b)], it has been superceded by the rule," *id.* at 135, and we interpret this holding to require us to apply rule 1.9(a) instead of *Jenson* to the extent that they are inconsistent with each other. Thus, the general similarity between Niemi's first employment-discrimination lawsuit and her second employment-discrimination lawsuit is not, by itself, a significant factor under rule 1.9(a), although it does inform the

analysis of the confidential factual information that presumably was communicated.

Although Roby is not disqualified pursuant to rule 1.9(a), we note that he is continuously subject to rule 1.9(c), which provides that, with limited exceptions, an attorney who formerly represented a client shall not thereafter "use information relating to the representation to the disadvantage of the former client ... or reveal information related to the representation." Minn. R. Prof. Conduct 1.9(c). Rule 1.9(c) is based on rule 1.6, which states that an attorney "shall not knowingly reveal information relating to the representation of a client," except in certain circumstances. Minn. R. Prof. Conduct 1.6(a); *see also* Minn. R. Prof. Conduct 1.9(c) cmt. 7. Rule 1.9(a) is essentially a prophylactic measure that prevents a violation of rules 1.6(a) and 1.9(c) when such a violation is either so likely to occur or so likely to be damaging to the former client that the risk of the violation cannot be tolerated. *See National Texture Corp. v. Hymes,* 282 N.W.2d 890, 894 (Minn.1979) (stating that "purpose for disqualification of [former] attorney ... is to ensure the attorney's absolute fidelity and to guard against inadvertent use of confidential information"). But the conclusion that disqualification is not required by rule 1.9(a) at the outset of a lawsuit does not foreclose the possibility that disqualification might be required by rule 1.9(c) at a later stage of the lawsuit. Nothing in the rules or in this opinion prevents Niemi from bringing a second disqualification motion to enforce rule 1.6(a) or rule 1.9(c).

## DECISION

This lawsuit and Niemi's prior lawsuit are not substantially related matters for purposes of rule 1.9(a) of the Minnesota Rules of Professional Conduct. Accordingly, the district court erred by disquali-

fying Roby and his law firm from representing the Girl Scouts in this lawsuit.

Reversed.